# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ALVIN DARRELL SMITH,

    Petitioner,

v.                                        Civil Action No. 2:05cv64
                                            (Judge Maxwell)

WARDEN AL HAYNES,

    Respondents.

## OPINION/REPORT AND RECOMMENDATION AND ORDER DENYING PETITIONER'S REQUEST FOR RELEASE AND FOR EXPEDITED EVIDENTIARY HEARING

On September 1, 2005, the *pro se* petitioner initiated this case by filing an Application for Habeas Corpus Pursuant to 28 U.S.C. § 2241. In the petition, the petitioner challenges the calculation of his parole eligibility date by the Bureau of Prisons ("BOP"). More specifically, the petitioner asserts that he is entitled to certain credits on his sentence, which if applied, would effectively lower his parole eligibility and mandatory release dates.

On June 26, 2006, the undersigned conducted a preliminary review of the file and determined that summary dismissal of the petition was not warranted at that time. Therefore, the respondent was directed to show cause why the petition should not be granted. A review of the file shows that the respondent has filed a Motion to Deny the Petition, with supporting memorandum.

On September 8, 2006, the Court issued a <u>Roseboro</u> Notice in which the petitioner was advised of his right to file a response to the respondent's motion. The petitioner filed a reply to the respondent's motion and later filed numerous documents in support of his claims.

In addition, the petitioner has filed numerous other motions which are currently pending before the Court. Those motions include:

(1) Motion for Writ of Mandamus.

(2) Request for Release Pending Decision and for Expedited Evidentiary Hearing.

(3) Combined Motion for Preliminary Injunction, Request to Accelerate Adjudication of Merits, Request for Evidentiary Hearing, and Request for Release on Bond Pending Decision.

(4) Motion for Writ of Mandamus and for Writ of Prohibition.

## I. The Pleadings

### A. The Petition

In the petition, the petitioner asserts that he is being unlawfully detained because his face-sheet has not been updated by the District of Columbia Department of Corrections ("DCDC") in almost 12 years, to include 960 days of educational good-time and 211 days of meritorious good time. The petitioner asserts that he has provided both the BOP and the DCDC with the documentation necessary to update his face-sheet, but that neither has done so. The petitioner asserts that the BOP is responsible for the computation of his sentence, but acknowledges that the BOP cannot credit his sentence with the requested good time until the DCDC updates his face-sheet. As a result, the petitioner asserts that his parole eligibility date has been improperly calculated.

As relief, the petitioner seeks to have the DCDC update his face-sheet with the 960 days of educational good time owed, to have the BOP award him 211 days of meritorious good time and recalculate his parole eligibility date to January 24, 2001, thereby forcing the United States Parole Commission to order his mandatory release.

### B. The Respondent's Response

In the response, the respondent asserts that this case is not really about sentence computation as the petitioner does not argue that the BOP has made any errors in the manner in which it has

calculated the petitioner's sentence. Instead, the respondent asserts that this case really involves the petitioner's disagreement with the number of education good time credits to be awarded to his sentence. The respondent asserts that to date, the BOP has only received documentation from the DCDC showing that the petitioner is entitled to 245 days of education good credit time. Moreover, the respondent argues that the BOP has credited all of that time to the petitioner's sentence. Therefore, the respondent asserts that the BOP cannot award the petitioner the credit he seeks. The respondent acknowledges that should the DCDC provide the BOP with additional verification which provides that the petitioner is entitled to the credit he seeks, his sentence computation should be, and will be, amended accordingly.

Likewise, the respondent asserts that at this time, the petitioner has been awarded all verified meritorious good conduct time. Moreover, the respondent asserts that the petitioner does not actually allege that his sentence is improperly calculated, only that he is entitled to more credit than he has been given to date. Because the petitioner's records do not show that he has received more than 113 days of meritorious good credit time, the respondent argues that the BOP cannot credit him with the time he seeks. Thus, the respondent asserts that this case should be denied and dismissed from the Court's docket.

### C. The Petitioner's Reply

According to the petitioner, the DCDC is involved in his unlawful detainment by virtue of its failure to update his face-sheet. In addition, the BOP and the Parole Commission are complicit in his illegal detainment by failing to seek assistance and/or force the DCDC to correct his face-sheet. The petitioner asserts that he has provided each agency with the documentation necessary to update his face-sheet and recalculate his sentence, but that each has refused to do so. Therefore, the

petitioner asserts that the BOP has failed to calculate his sentence properly, and hence, his parole eligibility date. However, the petitioner again concedes that the only reason his sentence is not properly computed is because the DCDC has not updated his face-sheet to include the additional credit he seeks.

## II. The Petitioner's Conviction and Sentence

According to the respondent, the petitioner is a District of Columbia Code offender, serving his sentence in a BOP prison. On November 14, 1992, the petitioner was arrested by D.C. law enforcement for violating D.C. ST. § 22-2103, Murder in the Second Degree, D.C. ST. § 22-4502, Additional Penalty for Committing Crime when Armed, and D.C. ST. § 22-45-4, Carrying Concealed Weapons; Possession of Weapons During Commission of a Crime of Violence. The D.C. Superior Court sentenced the petitioner under the District of Columbia Good Time Credits Act of 1986 (DCGTCA) to a life term, with a minimum of 15 years.

Subsequently, on January 13, 1994, the petitioner was arrested by D.C. law enforcement for violating D.C. ST. § 22-3501, Taking Indecent Liberties with a Minor Child. The petitioner was sentenced under the DCGTCA to a six-year term of imprisonment, with a minimum term of 18 months, to run consecutively to his life term.

Under the National Capital Revitalization and Self-Government Improvement Act of 1997 ("Revitalization Act"), D.C. ST. § 24-101 et. seq., the petitioner was transferred to the custody of the BOP on July 27, 2001. At that time, the petitioner was designated to the Federal Correctional Institution in Edgefield, South Carolina. The petitioner was transferred to USP Atlanta on February 28, 2002, and then to USP Coleman, Florida, on December 19, 2002. The petitioner was designated to USP Hazelton on April 20, 2005, where he currently remains.

4

## III. Petitioner's Sentence Computation

The respondent contends that the BOP's responsibility for calculating the petitioner's sentence is limited to the manner in which the DCDC would have calculated the same sentence. Therefore, the respondent argues that the BOP cannot award the petitioner more good time credits than the DCDC would have given him.

The BOP has commenced the petitioner's federal sentence as of March 15, 1994, the date on which the sentence was imposed. In accordance with the DCGTCA, the petitioner has received 79 days of jail credit for time spent in custody during November 24, 1992 through December 11, 1992, and January 13, 1994 through March 14, 1994. In addition, the petitioner has been awarded 245 days of education credits based on documentation provided by the DCDC, 113 days of meritorious good time, and a 27-day lump sum good time award for a total of 385 days of good time credit.

The respondent asserts that the petitioner has lost 90 days of good time credit due to various disciplinary violations.

## IV. Analysis

The Revitalization Act provides that the BOP is responsible for computing the sentences of D.C. offenders housed in BOP facilities. D.C. ST. § 24-101(b). Moreover, such persons are "subject to any law or regulation applicable to persons committed for violations of laws of the United States consistent with the sentence imposed." Id. at § 24-101(a). Therefore, although the BOP is responsible for computing the sentences of D.C. offenders housed in its facilities, the District of Columbia Code continues to control the computation of such sentences.

With regard to educational good time, the DCGTCA provides:

(a) Every person whose conduct complies with institutional rules and who demonstrates a desire for self-improvement by successfully completing an academic

or vocational program, including special education and Graduate Equivalency Diploma Programs, shall earn educational good time credits of no less than three days a month and not more than five days a month. These credits shall not be awarded until completion of the academic or vocational program.

(b) Educational good time credits authorized by the provisions of this section shall be applied to the person's minimum term of imprisonment to determine the date of eligibility for release on parole and to the person's maximum term of imprisonment to determine the date when release on parole becomes mandatory.

DCGTCA § 24-221.01.

In this case, it is undisputed that the BOP has only received documentation from the DCDC which provides that the petitioner is entitled to 245 days of educational good time credits and all of that time has been credited to the petitioner's sentence. Moreover, the BOP has informed the petitioner that if he can provide proper verification from the DCDC that he is entitled to additional credit, then that time will also be credited to his sentence. Thus, the BOP has not improperly calculated the petitioner's educational good time credits.

In addition, with regard to Meritorious Good Time, the DCGTCA provides:

(a) In the discretion of the Director of the Department of Corrections, a prisoner may be allowed meritorious good time credit for performing exceptionally meritorious service or performing duties of outstanding importance in connection with institutional operations.

(b) Meritorious good time credits authorized by this section shall be applied to the person's minimum term of imprisonment to determine the date of eligibility for release on parole and to the person's maximum term of imprisonment to determine the date when release of parole becomes mandatory.

DCGTCA § 24-221-01a.

Here, it is undisputed that the petitioner's records show that he earned 113 days of meritorious good time credit during his incarceration at USP Coleman. That time has been credited to the petitioner's sentence. The petitioner's records do not show that he earned any additional

meritorious credits. Thus, his sentence has not been improperly calculated.

Nonetheless, it appears that the petitioner is really arguing that the BOP has not thoroughly investigated his claims for additional good conduct time and that such inaction makes the BOP complicit in the petitioner's illegal detention. That claim, however, is clearly refuted by the petitioner's own exhibits.

In his unmarked exhibits to the petition, the petitioner provides the Court with a copy of Warden Haynes' response to the petitioner's administrative request for additional good time credit. See Petition at unmarked exhibits (dckt. 1-2), page 21 of 66. In that response, Warden Haynes advises the petitioner that his request is being forwarded to the Central Records Office for further review. Id. Warden Haynes further informs the petitioner that records staff will review his request and determine whether the petitioner is entitled to additional educational credits. Id. Clearly the BOP has investigated the petitioner's claims and has given consideration to the petitioner's request. The petitioner merely disagrees with the BOP's assessment of his applicable good time credit.

Moreover, in response to the respondent's motion to deny petition, the petitioner filed several other documents in support of his claims. See dckt. 39. At exhibit five, the petitioner attaches a copy of a letter he received from the DCDC on November 17, 2006. In that letter, a representative of the DCDC informs the petitioner that the DCDC has reviewed the documentation provided by the petitioner and has found that he is not entitled to more educational good time credits. See also Petition at unmarked exhibits (dckt. 1-2) at page 19 of 66 (Letter from Steven Smith, Warden, to Alvin Darrell Smith, dated August 26, 2003, in which Warden Smith finds that the petitioner is not entitled to additional educational good time credits). Therefore, the DCDC has on at least two occasions reviewed the petitioner's claim for additional credit and found it unnecessary to update

the petitioner's face-sheet because the petitioner is not entitled to more credit than has already been applied to his sentence. Because the DCDC has refused to credit the petitioner with additional educational good time credits, there is nothing more the BOP can do.

## V. Petitioner's Pending Motions

### A. Motion for Writ of Mandamus

In this motion, the petitioner seeks a writ of mandamus directing the respondent to resolve all of the petitioner's medical and dental issues, as well as issues pertaining to segregation and disciplinary reports.

Pursuant to 28 U.S.C. § 1361, "the district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." However, the Court's authority to issue a writ of mandamus extends only to the issuance of writs necessary or appropriate in aid of its jurisdiction. 28 U.S.C. § 1651. "The remedy of mandamus is a drastic one, to be invoked only in extraordinary circumstances." Kerr v.United States Dist. Court, 426 U.S. 394, 402 (1976). "The party seeking mandamus relief carries the heavy burden of showing that he has no other adequate means to attain the relief he desires and that his right to such relief is clear and indisputable." In re Beard, 811 F.2d 818, 826 (4th Cir. 1987) (internal quotations omitted).

In this case, the issues that the petitioner would like to have resolved are unrelated to the claims raised in the instant case. Moreover, those issues concern the conditions of the petitioner's confinement and not the fact or duration of his confinement. Thus, those claims would be more appropriately addressed in a civil rights action. See Preiser v. Rodriguez, 411 U.S. 475, 499-500 (1973). Because the petitioner has failed to meet the requirements for issuance of such a drastic

8

remedy, the petitioner's motion for writ of mandamus should be DENIED.

## B. Request for Release Pending Decision and for Expedited Evidentiary Hearing

In this motion, the petitioner seeks release on his own recognizance pending the outcome of this case and an evidentiary hearing because of the "manifest injustice."

A conviction, and the government's "substantial interest in executing its judgment . . . dictates a formidable barrier for those who seek interim release while they pursue their collateral remedies. . . [I]n the absence of exceptional circumstances . . . the court will not grant bail prior to the ultimate final decision unless petitioner presents not merely a clear case on the law, . . . but a clear, and readily evident, case on the facts." Glynn v. Donnelly, 470 F.2d 95, 98 (1st Cir.1972).

For the reasons set forth more fully above, the petitioner's right to relief is not clear and readily evident. Thus, the petitioner is not entitled to release pending the disposition of this case. Additionally, the pertinent facts of this case are fully developed in the record before the Court and the Court can adequately assess the petitioner's claims without further factual development. Consequently, the petitioner is not entitled to an evidentiary hearing and his motion is DENIED.

## C. Combined Motion for Preliminary Injunction, to Accelerate Adjudication, for Evidentiary Hearing and for Release on Bond

In this motion, the petitioner seeks an injunction against the Honorable Wm. Terrell Hodges, Senior United States District Judge for the Middle District of Florida. More specifically, the petitioner requests an Order preventing Judge Hodges from dismissing a similar § 2241 petition filed in that Court.[1] In support of this request, the petitioner asserts that Judge Hodges has issued an Order

---

[1] See Smith v. McKelvy, et al., 5:03-cv-265-Oc-10GRJ (M.D.Fl. 2003). The issue in that case is identical to the issue raised in the instant case. However, that case was dismissed without prejudice on May 4, 2004, for the failure to exhaust administrative remedies. See Id. at dckt. 25.

dismissing his claims in that Court for the failure to exhaust administrative remedies. In addition, Judge Hodges has denied the petitioner's request to reinstate his case and has found that the petitioner is not entitled to appeal as a pauper. Thus, the petitioner asserts that Judge Hodges is denying him access to the Courts.

The standard for granting injunctive relief in this Court is the balancing-of-hardship analysis set forth in Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189 (4th Cir. 1977). In making this analysis, the Court must consider the following four factors:

(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied,

(2) the likelihood of harm to the defendant if the requested relief is granted,

(3) the likelihood that the plaintiff will succeed on the merits, and

(4) the public interest.

Direx Israel, Ltd v. Breakthrough Medical Corp., 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). The "[p]laintiff bears the burden of establishing that each of these factors supports granting the injunction." Id. (citation omitted).

A court will not grant a preliminary injunction unless the plaintiff first makes a "clear showing" that he will suffer irreparable injury without it. Id. The required harm "must be neither remote nor speculative, but actual and imminent." Id. (citations and internal quotation omitted). If such harm is demonstrated, the court must balance the likelihood of harm to the plaintiff if an injunction is not granted and the likelihood of harm to the defendant if it is granted. Id. (citation omitted). If the balance of those two factors "'tips decidedly' in favor of the plaintiff, a preliminary injunction will be granted if the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more

deliberate investigation." Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 359 (4th Cir. 1991) (citations omitted). However, "[a]s the balance tips away from the plaintiff, a stronger showing on the merits is required." Id. (citation omitted).

In his case, the petitioner has failed to establish that he will suffer irreparable harm if an injunction does not issue. Moreover, for the reasons set forth above, the petitioner cannot establish a likelihood that he will succeed on the merits of his claims. Accordingly, the undersigned recommends that the petitioner's motion for injunctive relief (dckt. 36) be DENIED.

Additionally, to the extent that the petitioner requests that his case be expedited, that the Court conduct an evidentiary hearing, or that he be released on bond, those claims should be DENIED for reasons already set forth in the Opinion.

### D. Motion for Writ of Mandamus and for Writ of Prohibition

In this motion, the petitioner seeks a writ of mandamus and writ of prohibition against Judge Hodges compelling him to refrain from acting with incompetence and/or from intentionally misapplying clearly established caselaw. However, the petitioner cites no authority for the proposition that this Court has the jurisdiction to issue a writ of mandamus or writ of prohibition against a district judge sitting in a collateral court outside this district. Consequently, the undersigned recommends that the petitioner's motion be DENIED.

### VI. Recommendation

For the foregoing reasons, the petitioner's Request for Release and Motion for Expedited Evidentiary Hearing (dckt. 35) is **DENIED**. Moreover, the undersigned makes the following recommendations to the Court:

(1) the respondent's Motion to Deny the Petition (dckt. 26) be GRANTED and that the

11

petitioner's Petition for Writ of Habeas Corpus be **DENIED and DISMISSED with prejudice**.

(2) the petitioner's Motion for Writ of Mandamus (dckt. 34) be **DENIED**.

(3) the petitioner's combined Motion for Preliminary Injunction, to Accelerate Adjudication, for Evidentiary Hearing and for Release on Bond (dckt. 36) be **DENIED**.

(4) the petitioner's Motion for Writ of Mandamus and for Writ of Prohibition (dckt. 37) be **DENIED**.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Opinion/Report and Recommendation to the *pro se* petitioner.

DATED: June 27, 2007.

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE

12